# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| Sherborah Monique DAVIS, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 5:09-CV-283 (MTT) |
| Michael J. ASTRUE, *Commissioner of Social Security*, | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court for review of the Commissioner of Social Security's denial of benefits pursuant to the Social Security Act, 42 U.S.C. § 423. For the following reasons, the decision of the Commissioner is **AFFIRMED**.

## PROCEDURAL HISTORY

On April 1, 2006, Plaintiff Sherborah Monique Davis filed her application for a period of disability and disability insurance benefits. On May 11, 2007, the Plaintiff filed an application for supplemental security income. In her applications, the Plaintiff claimed disability arising from mood syndrome with anxiety, hypertension, and tachycardia (rapid heartbeat). The alleged onset date of the Plaintiff's claimed disability is March 28, 2006.

The Plaintiff's claims were denied initially and upon reconsideration. On January 30, 2007, the Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ"). The matter was heard by an ALJ on January 17, 2008. On February 28, 2008, the ALJ denied the Plaintiff's claim. The Plaintiff filed a Request for Review of Hearing Decision March 18, 2008. The Appeals Council denied this request in an order dated June 17, 2009.

On August 13, 2009, the Plaintiff filed the instant action (Doc. 1). In response, the Commissioner filed an Answer (Doc. 7) and the administrative record (Doc. 9). In addition to her Complaint, the Plaintiff filed a supporting brief (Doc. 21). The Commissioner filed a memorandum in support of the ALJ's decision (Doc. 22) and the Plaintiff filed a brief in reply (Doc. 23). In view of the above, the final decision of the Commissioner on appeal is that of the ALJ issued Feb. 28, 2008. This matter is now ripe for review.

## LEGAL STANDARDS

The Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court's role in reviewing claims brought pursuant to the Social Security Act is, therefore, a narrow one.

The Court may not decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, the Court must decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). In so doing, the Court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth*, 703 F.2d at 1239. However, even if the

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The initial burden of establishing disability is on the claimant. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker,* 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant asserting entitlement to benefits must demonstrate that he suffers from an impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition, and with regard to claims for a period of disability and disability insurance benefits, the claimant must meet the insured status requirements set forth in the Social Security Act. 42 U.S.C. § 416(i); 42 U.S.C. § 423(c)(1).

With respect to analyzing the issue of disability, the Commissioner uses a five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or medically equals an impairment listed in Appendix 1 to Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past relevant work. Finally, and only if necessary, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past relevant work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ADMINISTRATIVE PROCEEDINGS

The Plaintiff was 36 years old at the time of the January 17, 2008, hearing. She has a high school education and has taken classes at Macon State College. The Plaintiff began working for the Government Employees Insurance Company ("GEICO") after she graduated from high school. The Plaintiff began as a file clerk and was promoted to mailroom clerk, endorsement clerk, underwriting clerk, and claims clerk. The Plaintiff left GEICO and briefly worked at J. C. Penney "around 2002." The Plaintiff returned to GEICO and worked until she claimed disability in March 2006.

As noted, the Plaintiff alleges disability arising from mood syndrome with anxiety, hypertension, and tachycardia. In his written decision, the ALJ began by noting the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. The ALJ then proceeded to employ the five-step evaluation procedure identified above.

At step one, the ALJ observed that the Plaintiff had not been engaged in substantial gainful activity at any time relevant to the decision. At step two, the ALJ decided that the Plaintiff suffered from the severe impairment of mood syndrome with anxiety. The ALJ regarded the Plaintiff's hypertension and tachycardia as non-severe impairments. At step three, the ALJ determined that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 to Part 404 of the regulations.

Accordingly, and before moving to step four, the ALJ evaluated the Plaintiff's residual functional capacity. In so doing, the ALJ noted that the Plaintiff had the residual

functional capacity to perform "routine and repetitive, not detailed or complex work."  (Doc. 9, Tr. 47).  The ALJ believed the Plaintiff's impairments could produce the alleged symptoms, but discredited the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms.

The ALJ proceeded to step four and made a determination of whether the Plaintiff's residual functional capacity allowed her to perform past relevant work.  The ALJ considered the testimony of the Plaintiff and a vocational expert at the hearing.  The Plaintiff stated that the file clerk position "was just simply putting files on [a] shelf."  (Doc. 9, Tr. 35).  The ALJ asked the vocational expert whether he had "enough information to classify [the Plaintiff's] work experience" and the vocational expert responded in the affirmative.  (Doc. 9, Tr. 33).  The vocational expert classified the file clerk position as light with a specific vocational preparation of three.[2]  The vocational expert testified that file clerks must manage large amounts of data and organize files.  Despite the need to manage data, the vocational expert classified the job as "very simple, entry-level" work.  (Doc. 9, Tr. 34).  Additionally, the vocational expert classified the claims clerk position as sedentary with a specific vocational preparation of four.[3]  The vocational expert testified that a claims clerk must be able to make records, keep reports, and provide information to individuals and that the position requires "interacting effectively with people."  *Id.*  The

---

[2] Jobs with a specific vocational preparation of three require over one month and up to three months of training.  DICTIONARY OF OCCUPATIONAL TITLES, Appendix C.  The vocational expert testified that the file clerk entry was 206.362-010 in the Dictionary of Occupational Titles, but the Plaintiff clarifies that there is no such entry and the File Clerk I position is 206.387-034.  Although the vocational expert cited the wrong provision, this error was harmless because the File Clerk I position is still light exertional work with a specific vocational preparation of three.

[3] Jobs with a specific vocational preparation of four require over three months and up to six months of training.  DICTIONARY OF OCCUPATIONAL TITLES, Appendix C.

vocational expert stated his testimony was consistent with the Dictionary of Occupational Titles.

In light of the testimony of the Plaintiff and the vocational expert, the ALJ concluded the Plaintiff would be able to perform the past relevant work of file clerk.

Accordingly, the ALJ concluded the Plaintiff was not disabled.

## DISCUSSION

The Plaintiff first argues the ALJ improperly discounted the opinion of her treating physician, Dr. Stephen Mallary. Because this issue concerns a question of legal sufficiency, a review of the relevant legal standards is in order. Pursuant to 20 C.F.R. § 404.1527(e)(2), the Commissioner will "consider opinions from medical sources on issues such as whether [the claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to [Part 404 although] the final responsibility for deciding these issues is reserved to the Commissioner." A statement by a medical source that the claimant is "disabled" or "unable to work" does not mean the Social Security Administration considers the claimant disabled. 20 C.F.R. § 404.1527(e)(1). However, the opinions of treating physicians are given substantial or considerable weight unless good cause is shown to the contrary. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Good cause has been found to exist "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. [Courts] have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (internal citations omitted). Courts are concerned with the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of the claimant's condition. *Id.*

Here, the Plaintiff contends Dr. Mallary found she had an impairment or combination of impairments that met or medically equaled the requirements of affective disorders pursuant to listing 12.04 contained in Appendix 1 to Part 404.[4]  The Plaintiff bases this on a form filled in by Dr. Mallary that asks questions couched in the language of paragraphs 12.04A and 12.04B.  In response, the Commissioner argues the ALJ's consideration of Dr. Mallary's completed form and the related documentary and/or objective medical evidence was both legally proper and supported by substantial evidence.

The form filled in by Dr. Mallary does not establish that the Plaintiff has an affective disorder as defined in listing 12.04.  To have an affective disorder pursuant to listing 12.04, a claimant must meet or medically equal the requirements of paragraphs 12.04A and 12.04B or simply paragraph 12.04C.  To meet or medically equal the requirements of paragraph 12.04A, a claimant must have at least four depressive syndrome symptoms, three manic syndrome symptoms, or bipolar syndrome "with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)."  The first and second question on Dr. Mallary's form list depressive and manic syndrome symptoms, respectively, and physicians are instructed to state whether the patient suffered from some or all of the symptoms.  (Doc. 9, Tr. 293).  Dr. Mallary simply answered "yes," indicating that the Plaintiff had some or all, but not which, of the depressive syndrome symptoms and some

---

[4] There are three types of affective disorders pursuant to listing 12.04: depressive syndrome, manic syndrome, and bipolar syndrome.  According to the ALJ, Dr. Mallary's findings would meet the listings for an affective disorder pursuant to listing 12.04 and anxiety-related disorder pursuant to listing 12.06. (Doc. 9, Tr. 50).  However, the form does not appear to ask questions pertinent to paragraph 12.06A, which is required for anxiety-related disorders.  Because Dr. Mallary did not conclude the Plaintiff had an anxiety-related disorder, the Court will only address affective disorders.

or all of the manic syndrome symptoms.[5] Thus, the completed form does not establish that the Plaintiff had the number of symptoms required by paragraph 12.04A. The form also contains questions relevant to paragraph 12.04B.[6] Based on his answers, Dr. Mallary only found the Plaintiff's condition met or medically equaled the requirements of paragraph 12.04B because he found extreme restriction of activities of daily living and extreme difficulties in maintaining social functioning.[7]

The ALJ did not find Dr. Mallary's completed form persuasive because the questions on the form "failed to clarify which symptoms the claimant experienced or if she experienced all of them." (Doc. 9, Tr. 50). There was no way for the ALJ to know which four depressive syndrome symptoms the Plaintiff suffered from or which three manic syndrome symptoms the Plaintiff suffered from.[8] Again, while Dr. Mallary found the Plaintiff's condition met or medically equaled the requirements of paragraph 12.04B, claimants must meet both paragraphs 12.04A and 12.04B to have an affective disorder. Because Dr. Mallary did not specify which depressive or manic syndrome symptoms the Plaintiff had pursuant to paragraph 12.04A, the ALJ had good cause to discount Dr. Mallary's completed form.

---

[5] Dr. Mallary somewhat qualified his answers by stating, in a handwritten notation to the form, that symptoms were present "per patient report."

[6] To meet or medically equal the requirements of paragraph 12.04B, the disorder must result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

[7] The form does not ask whether patients have *marked* difficulties in maintaining concentration, persistence, or pace or whether patients have repeated episodes of decompensation *each of extended duration*. Nevertheless, Dr. Mallary found the Plaintiff had at least marked limitations in the other two paragraph 12.04B criteria.

[8] The Plaintiff argues that only one symptom is needed to meet or medically equal the listing, but paragraphs 12.04A1 and 12.04A2 clearly specify that they require at least four and three symptoms, respectively.

After discounting Dr. Mallary's completed form, the ALJ determined whether the Plaintiff had an affective disorder. The ALJ disagreed with Dr. Mallary and found that the Plaintiff did not meet or medically equal the requirements of paragraph 12.04B. First, he determined she only had mild difficulties in daily living because she lived independently with her two boys. Second, the ALJ determined that the Plaintiff only had mild difficulties in maintaining social functioning because she lived with others and had regular contact with friends and family. Next, he found the Plaintiff only had moderate difficulties in maintaining concentration, persistence, or pace. Finally, the ALJ found the Plaintiff had not experienced any episodes of decompensation. Because the ALJ could not find at least two limitations that met or medically equaled the requirements of paragraph 12.04B, the ALJ found the Plaintiff could not establish an affective disorder by meeting or medically equaling the requirements of paragraphs 12.04A and 12.04B. The ALJ's determination was consistent with the psychiatric review technique reports of Dr. John Petzelt and Dr. John Cooper, in which no marked limitations and no repeated episodes of decompensation were found. (Doc. 9, Tr. 214, 289).

In sum, not only did the ALJ properly discount Dr. Mallary's completed form, the psychiatric evidence clearly supports his decision that the Plaintiff did not establish that she suffered from a disabling affective disorder.

Next, the Plaintiff argues the ALJ's failure to recontact Dr. Mallary for clarification constitutes reversible error. The Commissioner did not respond to the Plaintiff's argument and the Plaintiff believes the Commissioner should be deemed to have conceded error. The Social Security Administration has stated that:

> [b]ecause treating source evidence (including opinion evidence) is important,
> if the evidence does not support a treating source's opinion on any issue

reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Social Security Ruling 96-5p.

However, failure to recontact the treating physician is not automatic grounds for reversal. To remand, courts must determine "'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Robinson v. Astrue*, 365 Fed. Appx. 993, 999 (11th Cir. 2010) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). In *Robinson*, the Eleventh Circuit found the ALJ's failure to recontact the physician was not prejudicial because there was no evidence the ALJ would have changed his decision in light of any additional information. 365 Fed. Appx. at 999. Here, there was no prejudice by failing to recontact Dr. Mallary because the ALJ did not believe the Plaintiff met or medically equaled the requirements of paragraph 12.04B and there is no evidence his decision would have changed in light of any additional information. On the contrary, the ALJ expressly found recontact unnecessary because "there [was] sufficient and more reliable evidence of record to support []his decision." (Doc. 9, Tr. 50). Therefore, failure to recontact Dr. Mallary was not reversible error.

Third, the Plaintiff argues the ALJ erred by failing to specifically address whether the Plaintiff's impairment medically equaled the requirements of paragraph 12.05B.[9] To establish mental retardation pursuant to listing 12.05, a claimant must meet or medically equal the requirements of paragraph 12.05A, 12.05B, 12.05C, or 12.05D. Pursuant to

---

[9] The Plaintiff concedes she does not meet the requirements of paragraph 12.05B because she is not mentally retarded. Rather, she argues her impairment medically equals the requirements of paragraph 12.05B.

paragraph 12.05B, a claimant is mentally retarded if he receives a "valid verbal, performance, or full scale IQ of 59 or less." An IQ score of 59 or less does not automatically render a claimant disabled. *See Wilbon v. Comm'r of Soc. Sec.*, 181 Fed. Appx. 826, 828-29 (11th Cir. 2006) (determining claimant with IQ score as low as 54 not disabled because scores from other physicians were in 60 to 70 range).

Here, Dr. Larmia Robbins-Brinson administered a Wechsler Adult Intelligence Scale-III test to the Plaintiff and she received a verbal IQ score of 66, performance IQ score of 58, and full scale IQ score of 59. (Doc. 9, Tr. 202). The Plaintiff argues that because her impairment medically equals the requirements of paragraph 12.05B, the ALJ should have determined she was mentally retarded and, thus, disabled. However, Dr. Robbins-Brinson commented that "the obtained test scores and quotients present an invalid portrayal of the claimant's intellectual abilities" because "[the Plaintiff] was extremely anxious throughout the evaluation and displayed poor concentration and delayed information processing." (Doc. 9, Tr. 203). The ALJ believed Dr. Robbins-Brinson's remarks were consistent with the evidence and included the Plaintiff's cognitive limitations in his residual functional capacity assessment. (Doc. 9, Tr. 49-50). In light of Dr. Robbins-Brinson's remarks, the Court finds substantial evidence to support the ALJ's determination that the Plaintiff was not mentally retarded pursuant to paragraph 12.05B.

The next issue involves the ALJ's alleged failure to consider the following in his residual functional capacity assessment: the Plaintiff's reliance on friends and family; the Plaintiff's low global assessment of functioning scores from Dr. Mallary; and concentration, persistence, or pace limitations found by Dr. Robbins-Brinson and non-examining doctors. Although the Plaintiff contends the ALJ did not consider her reliance on family and friends for help with ordinary activities, the ALJ considered the Plaintiff's ability to function without

the help of family and friends.  Specifically, the ALJ considered the Plaintiff's ability to pick up her children from school, ability to take medication and groom herself without a reminder, and ability to shop with her husband even though she hated crowds.  (Doc. 9, Tr. 47-48).

While the ALJ did not consider the Plaintiff's global assessment of functioning scores, the Social Security Administration has not adopted this scale and stated that "[i]t does not have a direct correlation to the severity requirements in [the] mental disorder listings."  65 Fed. Reg. 50746, 50764-65.  The Plaintiff cites *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006) for the proposition that ALJs must address global assessment of functioning scores.  However, *McCloud* did not hold that ALJs must consider global assessment of functioning scores.  Rather, the Court in *McCloud* remanded a claim because the ALJ inaccurately characterized global assessment of functioning scores.  Here, the ALJ did not address the Plaintiff's global assessment of functioning scores and he was not required to do so.

Further, paragraph 12.04B criteria, such as limitations in concentration, persistence, or pace, are not a residual functional capacity assessment, but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. *Martino v. Barnhart*, 2002 WL 32881075, at *2 (11th Cir. 2002); Social Security Ruling 96-8p.  Thus, there is substantial evidence to support the ALJ's residual functional capacity assessment.

In addition to arguing the ALJ committed error in assessing her residual functional capacity, the Plaintiff also argues the ALJ committed reversible error by failing to obtain a complete description of past relevant work and compare it to her current abilities before finding she can still do it.  Specifically, the Plaintiff argues the ALJ concluded she could do

past relevant work without considering her impairments in performing detailed work, reasoning, concentration, or pace.

In determining that a claimant has the capacity to perform past relevant work, an ALJ is required to make (1) a finding of fact as to the individual's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's residual functional capacity would permit a return to his or her past job or occupation. Social Security Ruling 82-62. Here, the ALJ determined the Plaintiff had the residual functional capacity to perform "routine and repetitive, not detailed or complex work." The ALJ used the testimony of the Plaintiff and the vocational expert to classify the Plaintiff's past relevant work. The Plaintiff testified that file clerks place files on a shelf. The vocational expert testified that the file clerk position was "very simple, entry-level" work. Based on his residual functional capacity assessment, the Plaintiff's testimony, and the vocational expert's testimony, the ALJ determined the Plaintiff could perform the past relevant work of file clerk. Thus, there is substantial evidence to support the ALJ's determination that the Plaintiff could perform the past relevant work of file clerk.

Finally, the Plaintiff challenges the ALJ's adverse credibility finding. The Plaintiff states that, contrary to the ALJ's assertion, she was not enrolled in school during her final days at GEICO. While her statement is correct, it cannot overcome the substantial evidence in the record to support the ALJ's decision. Further, the Plaintiff argues the ALJ did not properly consider the minimal nature of her daily activities, but evidence in the record, including reports of Dr. Petzelt and Dr. Cooper, supports the conclusion that the Plaintiff did not have marked restriction of activities of daily living. (Doc. 9, Tr. 214, 289). The Plaintiff also claims the ALJ ignored evidence of the Plaintiff's reliability and

truthfulness. Even if the ALJ did not consider the foregoing, there is still substantial evidence to support the ALJ's determination that the Plaintiff was not disabled.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED**, this the 15th day of March, 2011.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT